Eileen A. Sullivan, J.
On May 31, 1972, petitioner filed a petition in this court seeking support from her husband for herself and infant son, under article 4 of the Family Court Act. On August 9, 1972, a temporary order was entered directing respondent to pay $30 a week for the support of the child. The parties since have been divorced and petitioner’s request for support for herself has been withdrawn.
*200 This proceeding is properly before this court. A petition brought by the Rensselaer County Department of Social Services on behalf of petitioner resulted in an order directing respondent to pay $75 a week for the support of his wife and infant child. On appeal, the matter was remanded for further proceedings, since, inter alla, no petition for an order of support had ever been filed. (Matter of Rensselaer County Dept. of Social Servs. v. Cossart, 38 A D 2d 635.) However, no petition was filed thereafter by the Rensselaer County Department of Social Services. Petitioner subsequently moved back to Albany County, where she had resided with her husband, where she now resides and where she was residing when she brought this proceeding.
Respondent also is properly before this court. Any objection he may have had as to the propriety of service was waived when he interposed a formal answer to the petition and appeared in this court personally and by attorney, on at least two occasions prior to raising such objection, on one of which occasions he requested that a hearing date be set.
In his answer, respondent disclaims responsibility for the support of the child on the ground that he is not the natural father.
The parties first met in 1963. Some time after that, respondent was sentenced to New York State Vocational Institute, Coxsackie, New York, from which he was released in August, 1965. Returning to the Albany area, he resumed his friendship with petitioner. Admittedly, they indulged in sexual relations during the fall of 1965, although there is disagreement as to the time such relations commenced. In December, petitioner told respondent that she thought she was pregnant. In March, they visited respondent’s parole officer, told him that she was pregnant, and that respondent was the father. Respondent testified that the parole officer gave him a choice between marrying petitioner or going back to Coxsackie. The parole officer, who testified, denied giving respondent any such choice, but stated that after the couple furnished a doctor’s certificate, he gave respondent permission to marry.
The child was born on June 14, 1966, when petitioner was 17 and respondent was 19. Respondent testified that he became suspicious that the baby was not his at that time and that he mentioned his suspicions to some friends and to his “ boss ”, who advised him that if he left his wife then he would not be responsible for the child. None of these people were called to testify, although respondent’s mother and stepfather testified *201 that soon after the child’s birth, petitioner told them that respondent was not the child’s father. This is denied by petitioner.
Petitioner testified that she resumed seeing respondent in August or September, 1965, that they had sexual relations prior to their marriage, that she does not know when the child was conceived, that she never told anyone the child was not his although when he visited her at the time of the baby’s birth he told her he had had doubts as to whether he was the father but that they agreed to stay together.
They lived with petitioner’s mother after the baby’s birth and the child was baptized in the presence of respondent, his parents and petitioner’s parents. Subsequently the three resided at various addresses as a family unit, respondent providing support. Respondent further testified that there were “ sporadic abandonments ” of him by petitioner, after each of which he took her and the child back and continued to support them, and that he never took steps to deny paternity prior to the support proceedings in Rensselaer County.
The presumption of legitimacy of the child of a married mother is one of the strongest and most persuasive known to the law (Matter of Findlay, 253 N. Y. 1). This presumption exists whether conception occurred before or after marriage (Matter of Lane v. Eno, 277 App. Div. 324). In Matter of Kehn v. Mainella (40 Misc 2d 55), a petition in which a married woman alleged that a man other than her husband was the father of a child conceived while she and her husband were separated, was dismissed. Although the court found that petitioner and respondent had sexual relations at the alleged time of conception of the child, and although the husband and wife denied that they had relations during their separation, while admitting that they had been alone together on occasion during the critical time, the court held (p. 57) that “ ‘ It is immaterial whether the parties to the marriage testify, as they both did here, that there was no intercourse between them during the period they were not separated, it is plainly the policy of the statute for reasons obviously based on sound public policy not to treat such a child as one born out of wedlock.’ ”
The presumption of legitimacy is not to be overcome by rumors, suspicions, or by inferences nicely posed (Matter of Diaz-Albertine, 153 N. Y. S. 2d 261; Matter of Anonymous, 12 Misc 2d 781), but only where common sense and reason are outraged by a holding that it abides as where a blood-grouping test conclusively excluded the possibility that the husband *202 could be the father of the child (Matter of Oliver v. England, 48 Misc 2d 335).
In Matter of Lane v. Eno (277 App. Div. 324, supra), the complainant charged a man other than her husband with being the father of her child, although she and her husband, who were married on August 9, 1947, were living together on January 5, 1948, when the child was born. There was opportunity of access by her husband; she gave her husband’s name for the birth record of the child; he paid or agreed to pay the medical and hospital bills and was willing to support the child. The court stated (p. 325) that “ No child should be stigmatized on the evidence .shown in this record. It is our opinion that the presumption of legitimacy has not been overcome by evidence of the force, weight, and quality requisite.”
The facts upon which the court based its decision are on all fours with the facts in this case, except that in the Lane case it was the mother who denied that her husband was the father of her child.
Here, the couple admitted to sexual relations prior to marriage, the child was born during the marriage, respondent visited the child in the hospital, paid the bills, had the child baptized with his name, and continued to support him for more than four years, never raising the issue of legitimacy until the Rensselaer County Department of Social Services brought a proceeding to compel respondent to support the child.
Under the circumstances, respondent has failed to sustain the heavy burden of proving that the child is not his son.
Accordingly, respondent is directed to pay the sum of $30 a week for the support of the child, such payment to be made through Albany County Family Court, commencing January 5, 1973.
The attorney for the petitioner is allowed counsel fees in the amount of $350, to be paid by respondent within 60 days from the date of service upon him of a copy of the order herein.